Tom C. Toner, WSB #5-1319
Kendal R. Hoopes, WSB #6-3422
Yonkee & Toner, LLP
P.O. Box 6288
Sheridan, WY 82801
(307) 674-7451 (telephone)
(307) 672-6250 (fax)
ttoner@yonkeetoner.com
krhoopes@yonkeetoner.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| Tear Drop Cattle Company LLC | ) | |
| | ) | |
| Plaintiff, | ) | Lead BK Case: 19-20699 |
| | ) | |
| v. | ) | |
| | ) | |
| Devon Energy Production Company, L.P. | ) | Adversary Proceeding: 20-02057 |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |
| | ) | |
| Devon Energy Production Company, L.P., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Carbon Creek Energy, LLC, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**Nature of the Case**

Tear Drop Cattle Company LLC and Devon Energy Production Company, L.P.

1

signed surface agreements that allowed Devon to use parts of Tear Drop's Ranch in Johnson County, Wyoming to engage in coalbed methane operations. Devon promised Tear Drop that it would make annual payments under each of the agreements. Devon entered the ranch and drilled wells and constructed and installed roads, pipelines and other facilities used to produce coalbed methane gas.  About 15 years after the first agreement was signed, Devon assigned these agreements to Moriah Powder River, LLC, which has filed bankruptcy under the name of US Realm Powder River, LLC. Of course, the annual payments due under the agreements were not made, and Tear Drop has sued Devon to collect unpaid annual payments.

Tear Drop's common law claim for breach of contract is based on the decisions of the Wyoming Supreme Court in *Pennaco Energy, Inc. v. KD Company, LLC*, 2015 WY 152, 363 P.3d 18 (Wyo. 2015) and *Pennaco Energy, Inc. v. Sorenson*, 2016 WY 34, 371 P.3d 120 (Wyo. 2016). The *Pennaco* cases hold that a coalbed methane company does not escape liability for the annual payments due under a surface agreement by assigning the agreements unless (1) the surface agreement contains an "exculpatory clause" stating that upon assignment of the contract the assignor is released from liability or (2) the surface owner agrees to release the company. Neither of those conditions are met in this case, and Devon is liable to pay the delinquent annual payments due under the surface agreements.

Because this is a common law breach of contract case, it is not a core proceeding. Common law claims for breach of contract do not depend on bankruptcy

2

law for their existence, claims for breach of contract can proceed in a court other than bankruptcy court, and common law claims for breach of contract obviously arise outside bankruptcy proceedings. *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990); *In re Telluride Income Growth, L.P.* 364 B.R. 390, 397 (B.A.P. 10th Cir. 2007).

Tear Drop's complaint presents a claim involving two non-debtor parties. Tear Drop has not filed a proof of claim against the debtor US Realm for any of the amounts owed under the surface agreements because its contracts are with Devon. Tear Drop has not consented to the bankruptcy court entering a final order or judgment on its common law claim for breach of contract. This court is prevented by statute and by the constitution from entering a final order or judgment on Tear Drop's common law claim. 28 U.S.C. §157(c); *Stern v. Marshall*, 564 U.S. 462, 487,131 S.Ct. 2594, 2611(2011). Therefore, the bankruptcy court is to make proposed findings of undisputed facts and proposed conclusions of law and recommendations to the United States District Court regarding Tear Drop's motion for summary judgment.

**Undisputed Facts**:

Tear Drop provides the following statement of undisputed facts.

1.      Tear Drop is the owner of a ranch in Johnson County which it uses for livestock operations. The surface of the land is owned by Tear Drop, and the underlying minerals are owned by third parties. (Stranahan Aff. ¶2). Tear Drop and Devon entered into five (5) surface agreements for Devon to use land owned by Tear Drop in Johnson County, Wyoming for Devon's coalbed methane operations.  Those

3

agreements were: (a) Surface Use Agreement dated December 21, 2000 which was later amended several times ("Surface Use Agreement"), (b) a Treatment Site Agreement dated November 19, 2007 ("Treatment Site Agreement"), (c) a letter agreement relating to a CBNG Produced Water Pipeline Easement and Right-of-Way Grant dated April 24, 2007 and signed by Tear Drop on April 27, 2007 ("Produced Water Agreement"), (d) a Road Use Agreement for Discharge Line dated February 11, 2008 ("Discharge Line Agreement") and (e) a Road Use Agreement dated August 16, 2000 assigned to Devon on which Devon agreed with Tear Drop to abide by all of the agreement's terms including the annual payment. ("Road Agreement"). (Stranahan Aff ¶4, Exs.1-6). All of the agreements required Devon to make annual payments to Tear Drop (Stranahan Aff. Exs. 1-6).

2.      Devon drilled, produced and operated coalbed methane wells on Tear Drop's land and on state land leased for grazing purposes by Tear Drop from the State of Wyoming.  Devon constructed and used roads on Tear Drop's land to access wells on Tear Drop's property, wells on lands owned by the State of Wyoming, and wells on lands owned by third parties. Devon also installed pipelines, power lines and reservoirs on Tear Drop's land in connection with its coalbed methane operations. (Stranahan Aff. ¶5)

3.      Devon assigned the surface agreements to Moriah Powder River, LLC in 2016. (Stranahan Aff. ¶6).

4

4.      Devon has never asked Tear Drop to release it from its obligations under the agreements, and Tear Drop has never agreed to release Devon from its obligations under the agreements. (Stranahan Aff. ¶7).

5.      Moriah now known as US Realm Powder River, LLC filed bankruptcy in the United States Bankruptcy Court for the District of Wyoming on October 31, 2019. (Stranahan Aff. ¶8).

6.      Gas is still being produced from coalbed methane wells that Devon drilled on lands described in the Surface Use Agreement, and gas operations are still being conducted on those lands. (Stranahan Aff. ¶9).

7.      The following annual payments under the Surface Use Agreement have not been paid:  $12,469.20 due February 7, 2020 for 10 wells that Devon drilled on Tear Drop's land; $7,909.65 due January 19, 2020 for 7 wells that Devon drilled on Tear Drop's land; $13,261.97 due October 1, 2019 for use of Tear Drop's land to access additional well sites on lands owned by other landowners; $2,071.00 due October 1, 2019 for reservoirs used to contain water produced by coalbed methane wells; $283.17 due October 5, 2019 for a surface impact payment for the JDFU 11G-1698 well located on state lands; and $1318.00 due September 26, 2019 for a surface impact payment for five wells drilled on state lands.

(Stranahan Aff. ¶10)

8.      The annual payment under the Treatment Site Agreement due November 19, 2019 in the amount of $21,554.40 has not been paid. (Stranahan Aff. ¶11). The

5

annual payment under the Produced Water Agreement due May 1, 2019 in the amount of $17,280.60 has not been paid. (Stranahan Aff. ¶12). The annual payment under the Discharge Line Agreement due February 7, 2020 in the amount of $1,852.50 has not been paid. (Stranahan Aff. ¶13). The annual payment under the Road Agreement due May 31, 2019 in the amount of $645.66 has not been paid. (Stranahan Aff. ¶14)

9.    Tear Drop gave Devon notice of default dated by certified mail return receipt requested on February 21, 2020. Devon received the notice of default on February 25, 2020. (Stranahan Aff. ¶15, Ex. 7).

10.    Tear Drop  gave Devon a supplemental and corrected notice of default by certified mail, return receipt requested, and by e-mail to Devon's attorney on May 5, 2020 to correct the earlier notice of default as to the CBNG Produced Water Pipeline Easement and Right-of-Way Grant.  Devon received the supplemental and corrected notice of default on May 11, 2020. (Stranahan Aff. ¶16, Ex. 8)

11.    Since receiving the notices of default, Devon has not paid any amounts to Tear Drop under any of the agreements. (Stranahan Aff. ¶17)

12.    Tear Drop has employed Yonkee & Toner, LLP to enforce the agreements. (Stranahan Aff. ¶18)

**Applicable Law**

The law in Wyoming is clear. An oil and gas company signing a surface use agreement with the surface owner remains liable for post-assignment breaches of the

6

agreement unless (1) the agreement contains an exculpatory clause expressly stating that the company is relieved from liability upon assignment or (2) the surface owner agrees to release the company from liability upon the assignment. *Pennaco Energy, Inc. v. KD Company, LLC*, 2015 WY 152, ¶43, 363 P.3d 18, 31 (Wyo. 2015); *Pennaco Energy, Inc. v. Sorenson*, 2016 WY 34, ¶45, 371 P.3d 120, 130-131 (Wyo. 2016).

The Wyoming Supreme Court stated the controlling rule of law in unmistakable terms.  "Absent an express provision stating a party's obligations end upon assignment of a surface use agreement like the ones in this case or a release by the surface owner, the party originally obligated under the agreement remains liable." *Pennaco Energy, Inc. v. KD Company*, LLC, 2015 WY 152, ¶45, 363 P.3d 18, 31 (Wyo. 2016). As the Wyoming Supreme Court noted, "[i]f this was not so every solvent person could obtain freedom from debts by delegating them to an insolvent." *Pennaco Energy, Inc. v. KD Co., LLC*, ¶29, 371 P.3d at 127.

Applying the two part test stated by the Wyoming Supreme Court to the facts of this case, two questions are asked:

1.    Do the agreements contain an express provision stating that Devon's obligations end upon assignment? No, none of the agreements contain such an exculpatory provision.  (Stranahan Aff. Exs. 1-6).

2.    Did Devon negotiate for and obtain a release from Tear Drop? No, Mr. Stranahan's affidavit states, "Devon has never asked Tear Drop to release it from its obligations under the agreements, and Tear Drop has never agreed to release Devon

7

from its obligations under the agreements." (Stranahan Aff. ¶7). The Wyoming Supreme Court emphasized the significance of the failure to request a release when it said, "Pennaco did not request that KD or Hollcrofts [the surface owners] release Pennaco from its contractual obligations and the landowners did not execute such releases." *Pennaco Energy, Inc. v. KD Company, LLC* at ¶74, 363 P.3d at 38. It is undisputed in this case that Devon did not request and Tear drop did not execute a release.

Judge Johnson in his *Order Granting Bankruptcy Referral* in this case recognized this clear Wyoming law and said, "Under Wyoming contract law, a party who assigns or delegates a contractual duty remains responsible for performance of that duty. *Pennaco Energy, Inc. v. KD Co., LLC*, ¶17, 363 P.3d at 23. Rights are assigned, but duties are delegated; the assignor normally has no further interest in a claim but continues to remain liable for performance of obligations. *Id*. Therefore, Devon's assignment to US Realm did not relieve it of any payment obligations to Tear Drop. . . There is no dispute Devon assigned its rights and obligations to US Realm, that US Realm is in Bankruptcy Court and that Devon's assignment does not relieve it of the obligation to pay Tear Drop should a court find Tear Drop is owed payment."

Therefore, Devon remains liable for post-assignment breaches of the agreements by its assignee.

Devon's defense to the application of the *Pennaco* cases was set out in its response to Tear Drop's motion to dismiss Devon's counterclaim filed in the United States District Court, which motion has now been referred to this court. Devon's defense

8

is summed up in the following statement in its resistance to the motion: "As a result, if Plaintiff has not received payments as required under the Agreements, there has been a material breach and the Plaintiff must mitigate its damages by cancelling the contract." (Page 6 of Response to Plaintiff's Motion to Dismiss in Case No. 2:20-CV-00164-KHR in the United States District Court now found at ECF 3 Attachment #12). Devon cited no legal authority for this proposition because this is not, has never been, and never will be the law of contracts.

According to Devon, the law in Wyoming is that if a party commits a material breach of a contract, then   the other party "must" cancel the contract and let the wrongdoer off the hook. In other words, contracts in Wyoming are meaningless scraps of paper. Under Devon's theory, no party to a contract could ever be sued for damages for committing a material breach of contract. In Devon's world, if it wants to get out of  a contract, then all it has to do is commit a material breach by stopping payments, and the other party's only recourse is to cancel the contract and let Devon go on its way.

Devon's extreme and unsupported position is even repudiated by the case it cited in its response. That case unequivocally states that when a party to a contract like Devon breaches its contract, the other party is not required to just cancel the contract. The injured party has two options, and one of those is to continue the contract and sue for damages. *Maverick Benefit Advisors, LLC v. Bostrom*, 2016 WY 96, ¶16, 382 P.3d 753, 758-759 (Wyo. 2016) states, "Thus when one party to a contract materially breaches the contract, the non-breaching party has two options: it may continue the contract–retain

9

its economic benefit and sue for damages, or it may repudiate the agreement–suspend
performance under the contract and sue for damages." Tear Drop has elected the first
option. Tear Drop is continuing the contracts with Devon and retaining the economic
benefits of the annual payments it was promised by Devon, and it has sued for damages.
Devon has continuing obligations under the agreements. It not only has the obligation
to make annual payments but also to reclaim the property. Cancellation of the
agreements is not a viable option for Tear Drop, and Tear Drop has not elected the
option of repudiating or cancelling the agreements. In the event of a breach of contract,
the injured party Tear Drop selects the option it wishes to pursue, not the wrongdoer
Devon.

The District Courts and the Circuit Courts of the of the State of Wyoming in the
Powder River Basin have repeatedly applied the *Pennaco* cases and consistently
granted summary judgment against coalbed methane companies which, like Devon,
assigned their surface agreements to insolvents and then tried to slough off their
contractual obligations. See *Love Land and Cattle Company v. Bearcat Energy, LLC, et
al.,* Civil Case No. 36599 Sixth Judicial District (Judge Rumpke)*; Gates-Yonkee Family
Limited Partnership v. Pennaco Energy, Inc.,* Case No. 34610 Sixth Judicial District
(Judge Rumpke);  *Love Land and Cattle Company v. Noble Energy Wyco*, LLC, et al,
Civil Case No. 37645 Sixth Judicial District  (Judge Perry); *Dan Mooney, et al v. Noble
Energy Wyco, LLC*, Civil Case No. 36901 Sixth Judicial District (Judge Deegan); *Eaton
Brothers Incorporated v. Noble Energy Wyco*, LLC, Civil Case No. 37351 Sixth Judicial

10

District (Judge Deegan); *49 Ranch, LLC v. Carbon Creek Energy, LLC, Moriah Powder River, LLC and WPX Energy Rocky Mountain, LLC*, Civil Case No. 37685 Sixth Judicial District (Judge Deegan); *Morse Land Holdings, LLC v. Noble Energy Wyco, LLC*, Civil Action No. 2017-1562 Sixth Judicial District (Circuit Judge Phillips); *Kuhn Ranch, LLC, et al v. Pennaco Energy, Inc.*, et al, Civil Action No. 2011-0148 Fourth Judicial District (Judge Kautz); *Powder River Livestock Company, Inc. v. Noble Energy Wyco, LLC*, Civil Action No. 2017-0032 Fourth Judicial District (Judge Edelman); *Powder River Livestock Company, Inc. v. Noble Energy Wyco, LLC*, Civil Action No. 2018-002 Fourth Judicial District (Judge Edelman); *49 Ranch LLC v. Noble Energy Wyco, LLC*, Civil Action No. 2018-25 Fourth Judicial District (Judge Edelman); *First Northern Bank of Wyoming, Buffalo, et al v. Noble Energy Wyco, LLC*, Civil Action No. 2017-353 Fourth Judicial District (Circuit Judge Jarvis). Devon should not expect a different result just because it shopped this case in a different forum.

**Wyo. Stat. §30-5-405(b) Twice the Amount of Unpaid Installment**

The Wyoming Split Estate Act *Wyo. Stat*. §30-5-401, *et seq*. applies to any surface agreements entered into after July 1, 2005. The Wyoming Split Estate Act states, "An oil and gas operator who fails to timely pay an installment under any annual damage agreement negotiated with a surface owner is liable for payment to the surface owner of twice the amount of the unpaid installment if the installment payment is not paid within sixty (60) days of receipt of notice of failure to pay from the surface owner." *Wyo. Stat*. §30-5-405(b). The Wyoming Legislature enacted this statute because it saw a

problem with oil and gas operators entering into agreements with surface owners and then simply not paying and daring the surface owner to take on a large oil and gas company, like Devon, that could run up the litigation expenses. The Legislature acted to stop this predatory behavior under surface agreements by imposing double damages under the Wyoming Split Estate Act just as it earlier acted to stop oil and gas companies' predatory behavior under oil and gas leases by imposing 18% interest on delinquent royalties under the Wyoming Royalty Payment Act. The double damages provision of *Wyo. Stat*. §30-5-405(b) of the Wyoming Split Estate Act and the 18% interest provision of *Wyo. Stat*. §30-5-303(b) of the Wyoming Royalty Payment Act both reflect an important public policy, which is "to stop oil producers from retaining other people's money for their own use." *Cabot Oil & Gas Corp. v. Followill*, 2004 WY 80, ¶ 11, 493 P.3d 238, 242 (Wyo. 2004).

Three of the surface agreements were entered into after July 1, 2005: the Treatment Site Agreement was entered into on November 19, 2007, the Produced Water Agreement was entered into in April of 2007, and the Discharge Line Agreement was entered into on February 11, 2008. The lands covered by these three surface agreements are split estate lands (meaning that the surface ownership differs from the mineral ownership) and are covered by the Wyoming Split Estate Act.

Tear Drop gave Devon written notice of failure to pay the annual installments due under those surface agreements, and Devon did not pay the annual installment payments within 60 days of receipt of the notice.  (Stranahan Aff. ¶¶ 15, 16, Exs. 7, 8).

12

Instead, Devon stonewalled Tear Drop and refused to pay. Therefore, Tear Drop is entitled to double damages on the amounts owed under the Treatment Site Agreement, the Produced Water Agreement and the Discharge Line Agreement.

**Prejudgment Interest**

The annual payments due under the agreements are liquidated amounts. Accordingly, as has been repeatedly decided by State of Wyoming District Courts, landowners like Tear Drop are entitled to recover prejudgment interest at the rate of 7% per year on the amounts owed from the date the payments were due until the date of judgment. *Wyo. Stat.* §40-14-106.

**Attorney Fees**

Attorney fees are recoverable if expressly provided for by contract. *Pennaco Energy, Inc. v. KD Co. LLC*, 2015 WY 152, ¶84, 363 P.3d 18, 39 (Wyo. 2015) (awarding surface owner its attorney fees for coalbed methane operator's breach of surface agreement). The Surface Use Agreement provides that if Devon defaults and fails to cure the default after notice and if Tear Drop prevails in any action by reason of Devon's default and failure to , then Devon shall pay the reasonable attorney fees and associated expenses incurred by Tear Drop by reason of the default and failure to cure. (Stranahan Aff. Ex.1, ¶29). The Treatment Site Agreement provides that if either party brings an action to enforce the terms of the agreement, the prevailing party shall be entitled to its reasonable attorney fees to be paid by the losing party as fixed by the court. (Stranahan Aff. Ex.2, ¶24). The Discharge Line Agreement provides that if Devon violates the terms

13

of the agreement, Devon shall pay all costs and expenses including attorney fees incurred by Tear Drop in enforcing the agreement. (Stranahan Aff. Ex.4, ¶11).

Devon has breached those agreements and is liable for the reasonable attorney fees and expenses that Tear Drop incurred in enforcing these agreements. Those fees and expenses are to be established after a motion is filed by Tear Drop. Fed Bank. R. P. 54(b)(2); Fed. R. Civ. P. 54(d)(2); *Joe's Concrete and Lumber, Inc. v. Concrete Works of Colorado, Inc.*, 2011 WY 74, ¶¶15-18 252 P.3d 445, 448-449 (Wyo. 2011).

**Conclusion**

This motion for summary judgment should be granted because Devon has tried to engage in forum shopping, create a procedural snarl to avoid the *Pennaco* cases, delay Tear Drop's recovery, and increase the attorney fees and costs that Tear Drop has to incur just to get what Devon promised. Devon's tactics are designed to spend Tear Drop out of court. This is not a difficult issue, and Devon's efforts to delay should not be rewarded.

Therefore, Tear Drop requests that the court enter an order setting out proposed findings of undisputed facts and proposed conclusions of law and recommend to the United States District Court for the District of Wyoming that the court enter summary judgment as follows:

1.    Ordering that Devon is liable to Tear Drop for the delinquent annual payments due under the surface agreements.

14

2.      Awarding Tear Drop judgment against Devon in the amount of $12,469.20 for the ten wells under the Surface Use Agreement together with interest thereon at the rate of 7% per annum from February 7, 2020 to the date of judgment.

3.      Awarding Tear Drop judgment against Devon in the amount of $7,909.65 for the seven wells under the Surface Use Agreement together with interest thereon at the rate of 7% per annum from January 19, 2020 to the date of judgment.

4.      Awarding Tear Drop judgment against Devon in the amount of $13,261.97 for the use of Tear Drop's lands to access additional well sites located on lands owned by other landowners under the Surface Use Agreement together with interest at the rate of 7% per annum from October 1, 2019 to the date of judgment.

5.      Awarding Tear Drop judgment against Devon in the amount of $2,071.00 for the two reservoirs on Tear Drops land under the Surface Use Agreement together with interest thereon at the rate of 7% per annum from October 1, 2019 to the date of judgment.

6.      Awarding Tear Drop judgment against Devon in the amount of $283.17 together with interest thereon at the rate of 7% per annum from October 5, 2019 to the date of judgment and $1318.00 together with interest thereon at the rate of 7% per annum from September 26, 2019 to the date of judgment for the surface impact payment for wells drilled on State of Wyoming lands leased by Tear Drop under the Surface Use Agreement.

15

7.      Awarding Tear Drop judgment against Devon in the amount of $21,554.71 together with interest thereon at the rate of 7% per annum from November 19, 2019 to the date of judgment under the Treatment Site Agreement.

8.      Awarding Tear Drop judgment against Devon in the amount of $17,280.60 together with interest thereon at the rate of 7% per annum from May 1, 2019 to the date of judgment under the Produced Water Agreement.

9.      Awarding Tear Drop judgment against Devon in the amount of $1852.50 together with interest thereon at the rate of 7% per annum from February 7, 2020 to the date of judgment under the Discharge Line Agreement.

10.     Awarding Tear Drop judgment against Devon in the amount of $645.66 together with interest thereon at the rate of 7% per annum from May 31, 2019 to the date of judgment under the Road Agreement.

11.     Awarding Tear Drop judgment under Wyo. Stat. §30-5-405(b) against Devon in the amount of $21,554.40 under the Treatment Site Agreement and in the amount of $17,280.60 under the Produced Water Agreement and in the amount of $1,852.50 under the Discharge Line Agreement.

12.     Ordering that Devon is required to pay the attorney fees incurred by Tear Drop in enforcing the Surface Use Agreement, the Treatment Site Agreement, and the Discharge Line Agreement and directing Tear Drop to file a motion for these fees under Fed. Bank. R. P. 54(b)(2); Fed. R. Civ. P. 54(d)(2).

13.     Ordering Devon to pay Tear Drops costs in this matter.

16

Dated December 23, 2020

/s/ Tom C. Toner WSB # 5-1319
/s/ Kendal R. Hoopes WSB #6-3422
*Attorneys For Plaintiff*
Yonkee & Toner, LLP
P.O. Box 6288
Sheridan, WY  82801
(307) 674-7451 (telephone)
(307) 672-6250 (fax)
ttoner@yonkeetoner.com
krhoopes@yonkeetoner.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I served a true and correct copy of the above and foregoing through the Case Management/Electronic Case Filing (CM/ECF) system for the United States Federal Court for the District of Wyoming as allowed by CM/ECF Procedures Manual, Section III(F)(i)&(ii), and the Notice of Electronic Filing (NEF) of this document sent to the below recipients by the CM/ECF system shall constitute service.

Jeffrey J. Oven
Clayton H. Gregersen
Crowley Fleck, PLLP
joven@crowleyfleck.com
cgregersen@crowley fleck.com
Attorneys for Defendant

/s/ Tom C. Toner
Tom C. Toner